UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
FREDERICK M. ABRAMS,              :
                                  :
        Plaintiff,                :
                                  :
V.                                :  Case No. 3:09-CV-541 (RNC)
                                  :
DEPARTMENT OF PUBLIC SAFETY;      :
STEVEN FIELDS; PATRICK O'HARA;    :
JOHN TURNER; BARBARA LYNCH;       :
SEAN COX,                         :
                                  :
        Defendants.               :
```

RULING AND ORDER

Plaintiff Frederick Abrams, a detective assigned to the Eastern District Major Crimes Unit of Connecticut's Department of Public Safety ("DPS"), brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1983.  Plaintiff alleges that defendants DPS, Lieutenant Colonel Steven Fields, Captain Patrick O'Hara, Sergeant John Turner, Barbara Lynch, and Sergeant Sean Cox discriminated against him on the basis of his race and color, and in retaliation for his complaints about discrimination, by failing to assign him to the Eastern District Major Crimes Van, unduly scrutinizing his work, and temporarily reassigning him from the Criminal Investigation Unit to the Casino Unit.  Defendants have moved for summary judgment.  For the following reasons, the motion is granted in part and denied in part.

1

I.   Facts

The following facts are undisputed or, where in dispute, taken in the light most favorable to plaintiff.

Since 1986, plaintiff, an African-American man, has been employed by DPS.  While attending the State Police Training Academy, he had performance issues in the areas of report writing, penal code, and criminal investigations.  In 1990, plaintiff was made a detective with the Eastern District Major Crimes Unit ("EDMCU"), which investigates serious crimes, excluding homicides.  During his time as a detective, plaintiff received mixed evaluations with regard to his report writing and communications skills, ranging from "unsatisfactory" in 2001 to "very good" in 2006.

Beginning in 1998, plaintiff began to express interest in being assigned to the Eastern District Major Crimes Van ("the Van" or "the crime van").  The Van – which consists of five to six EDMCU detectives – investigates suspicious deaths, including homicides.  Detectives assigned to the crime van have the same pay and benefits as other EDMCU detectives.  However, EDMCU detectives aspire to be on the Van because it is considered an elite assignment, given to the best investigators within the Major Crimes Unit.

There is no formal application process for assignment to the Van.  Instead, when there is an opening, detectives can make

their interest known and submit their resumes.  Defendants Turner
and O'Hara, under the supervision of defendant Fields, would
choose the detective they believed was best for the Van.
Seniority is one factor among many that is considered when
deciding whom to assign to the Van, and a college degree is not a
requirement.

Plaintiff has not been assigned to the Van.  Every time he
asked Turner about the requirements to be on the Van, Turner's
answer would change.  Some time between 2000 and 2004, then-
Detective Andrew Matthews asked Van member Contre why plaintiff
was not on the Van, and Detective Contre told him that plaintiff
would never be assigned to the crime van because he "did not fit
in."[1]  Between 2003 and 2005, Lt. Col. Fields instructed Turner
and O'Hara to give plaintiff an opportunity to ride with the Van
as an alternate, but they never included him.

No African-American has ever been assigned to the Van.  At
all relevant times, plaintiff was one of no more than three
African-American detectives in the EDMCU, and neither of the
other detectives expressed interest in being assigned to the Van.
Turner, O'Hara and Fields assigned a number of Caucasian

_____

[1] At his deposition, plaintiff stated that in 2002,
Detective Matthews overheard a conversation between crime van
detectives, who said that plaintiff would never be on the Van
because "he doesn't fit in because he's black."  Abrams Dep. 62.
This hearsay evidence is inadmissible and cannot be the basis for
a denial of summary judgment.

detectives to the Van after plaintiff began to express interest, many, if not all, of whom were junior to plaintiff and had less training than plaintiff.  Plaintiff took note of the following assignees:

- Detective Leitkowski was assigned in 2004, although he had less seniority and training than plaintiff.  Leitkowski had skills in forensic drawing and diagraming crime scenes.

- Detective McFadden was assigned in 2006, although he had less seniority and training.  Sgt. Turner recommended McFadden for his "strong investigatory skills" and excellent report writing.

- In 2007, Cpt. O'Hara solicited recommendations from his Sergeants to fill an opening in the Van.  Plaintiff's supervisor, Sgt. Wakely, recommended plaintiff and rated him "superior" in every category.  After he submitted his recommendation, Wakely was "taken to task" by Fields and O'Hara, who asked him to come in and explain himself. Detective Payette was also rated "superior" in every category by his supervisor.  Payette had less seniority and training than plaintiff.  Turner and O'Hara selected Payette, citing his strong technical investigatory skills, including his facility with electronic equipment, and his Bachelor's Degree.  Plaintiff does not have a four-year college degree.  When Sgt. Wakely spoke to Lt. O'Hara about

4

his selection, O'Hara said that Payette would "fit in better" and noted his college degree.

- Detective Vining, the sole woman on the Van, was assigned in 2008.  She was junior to plaintiff and had less training.  Defendants say she was chosen for her skills related to investigations of crimes involving children, particularly the forensic interviewing of children, for her Bachelor's Degree in Psychology, and because they needed a female Van member.

- Detective Lamoureux was also assigned in 2008, and he also had less seniority and training than plaintiff, although he had a Bachelor's Degree in Criminal Justice/Law Enforcement Administration.  Defendants claim he was chosen for his strong investigatory skills, including his interviewing ability.

- Later in 2008, Detective Hoyt, who also had less seniority and training, was assigned to the Van.  He had a Bachelor's Degree in Justice and Law Administration.  Defendants state that they assigned him because of his ability to work with other agencies, particularly the Department of Children and Families, and his expertise in handling cases involving children and victims of sexual assault.

- Detective Cargill, who had less experience and training than plaintiff, was assigned to the Van in March 2009.

5

Defendants say they chose him because of his experience as an emergency medical technician.  Detective Cargill was also chosen, defendants proffer, because of his investigatory skills and report writing.

- Finally, Detective Kasperowski was assigned in October 2009. He, too, had less experience and training than plaintiff. He had both a Bachelor's Degree and a Master's Degree. Defendant Sean Cox recommended Kasperowski because of his excellent interviewing skills and his past success in solving sexual assault cases.

Plaintiff spoke with Affirmative Action Officer Barbara Lynch about his concerns.  She indicated to him that she would not investigate his grievance, so he never filed a written complaint with her.  In April 2007, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO), alleging that DPS discriminated and retaliated against him by assigning Detective McFadden and another Caucasian detective to the Van instead of him.

In 2007, Fields again told Turner and O'Hara to allow plaintiff to ride with the Van.  Plaintiff was called several times, but he was either in class or on vacation and did not ride.  However, on the morning of June 21, 2007, plaintiff was available, and he rode with the crime van.  The Van members went to breakfast together after leaving the crime scene; however, the

other detectives on the Van made plaintiff feel like he did not belong.  He was not assigned to ride again.

On September 25, 2007, plaintiff filed another CHRO complaint alleging retaliation and a hostile work environment. He specifically mentioned the June 21 incident, stating that his fellow detectives "gave [him] the feeling that [he] didn't belong at the crime scene, and that they had to tolerate [him] which gave [him] the feeling that this was a hostile environment." After plaintiff filed this CHRO complaint, Turner was told by legal affairs and Major Fields "that [he] had to keep [his] distance basically": that he should not have contact with the plaintiff.  Because Turner was told not to speak with plaintiff, he did not get information about plaintiff's interest in being on the Van, and he would not have "reach[ed] out" to plaintiff to ask him to be on the Van had he known of plaintiff's interest. Turner Dep. 80.  Turner stopped considering plaintiff for vacancies on the Van, id. 78-80, including the vacancy ultimately filled by Detective Cargill, id. 83.

Plaintiff filed several more complaints.  A November 2007 CHRO complaint alleged discrimination and retaliation because plaintiff was not being assigned to participate in investigations.  In March 2008, plaintiff sent a letter to the Commissioner of the State Police alleging discrimination and a hostile work environment.  In December 2009, plaintiff filed a

CHRO complaint alleging discrimination and harassment, citing Cargill and Kasperowski's assignments.

In 2007 or 2008, Sgt. Cox began to supervise plaintiff. Plaintiff noticed that Cox over-scrutinized his reports, making an unnecessary number of corrections, and talked with other detectives about plaintiff's cases instead of discussing them with plaintiff directly. In 2010, plaintiff filed a complaint against Sgt. Cox with the DPS Affirmative Action Office, which was found to be unsubstantiated. He never filed a CHRO complaint against Cox.

In May 2010, several detectives in plaintiff's troop complained that plaintiff made them feel uncomfortable at work. Sgt. Cox forwarded emails from those detectives to his superiors. Later that month, approximately five months after plaintiff's last CHRO complaint, Defendant Fields held a meeting with DPS's lawyers, departmental supervisors, and human resources personnel. At the end of the meeting, Fields decided to reassign plaintiff to the Casino Unit, pending an investigation of the complaints against him. At the Casino Unit, plaintiff retained his title, his status as a member of the EDMCU, and his salary, but he no longer participated in Major Crime investigations – his work largely consisted of background checks – and his commute doubled. In December 2010, plaintiff was transferred back to Major Crimes but assigned to Troop C in Tolland instead of Troop K in

Colchester, where he had worked before his transfer.  He remains in Tolland.

II.  Discussion

Plaintiff sues under Title VII and § 1983, asserting that defendants discriminated against him based on his race when they failed to assign him to the Van.  Defendants respond that plaintiff did not suffer an adverse employment action for purposes of a Title VII claim, and they had legitimate, nondiscriminatory reasons for choosing other detectives for the Van.  Plaintiff also claims that defendants retaliated against him for his CHRO complaints by not assigning him to the Van and sending him to the Casino Unit.  Again, defendants argue that plaintiff did not suffer adverse employment actions and that they had legitimate reasons for their decisions.  They also argue that they are immune from suit in their individual capacities.  Defendants have moved for summary judgment on these grounds.

A.  Standard

A court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To avoid summary judgment, a plaintiff must point to evidence that would permit a jury to return a verdict in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.   Title VII Discrimination Claim

Plaintiff claims that by not assigning him to the Van, defendants discriminated against him because of his race and color, in violation of Title VII.  A discrimination claim under Title VII is analyzed using the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). First, the plaintiff must establish a prima facie case of discrimination.  Then, the burden shifts to the defendants to provide a legitimate, non-discriminatory reason for their actions.  The plaintiff then must proffer sufficient admissible evidence to permit a rational finder of fact to infer that the employer's reason is merely a pretext for discrimination.  Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).  I find that the plaintiff fails at this last stage: he is unable to show that defendants' reasons are pretextual.

1.   Prima Facie Case

To establish a prima facie case of employment discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  U.S. v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011). As an African-American man, plaintiff is a member of a protected class.  And it is undisputed that as an EDMCU detective, he was

qualified to be on the crime van.  Further, because all the detectives assigned to the Van were white, the circumstances surrounding the denial of plaintiff's request to be assigned to the Van give rise to an inference of discrimination.  See Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).  Defendants argue, however, that plaintiff did not suffer an adverse employment action.

A plaintiff has suffered an adverse employment action if he has experienced a "materially adverse change" in the terms and conditions of his employment.  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  While he need not experience economic loss, "there must be a link between the discrimination and some 'tangible job benefits' such as 'compensation, terms, conditions or privileges of employment.'"  Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994).  A denial of a lateral transfer – where the employee's title and pay would not change – is usually not an adverse employment action.  Williams v. R.H. Donnelley Corp., 368 F.3d 123, 128 (2d Cir. 2004).  However, the Second Circuit has held that it may constitute an adverse employment action when "the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability."

Beyer v. County of Nassau, 524 F.3d 160 (2d Cir. 2007) (emphasis
added); see also Ward v. State Dep't of Pub. Safety, No. 3:06-CV-
01936, 2009 U.S. Dist. LEXIS 3756, at *20 (D. Conn. Jan. 21,
2009).

Defendants argue that because plaintiff's title, seniority,
pay[2] and benefits did not change, he did not suffer an adverse
employment action.  They note that "subjective, personal
disappointment" is not sufficient for a denial of transfer to
constitute an adverse employment action.  See Beyer, 524 F.3d at
164 (quoting Galabya, 202 F.3d at 640).  Plaintiff points out
that the crime van is an "elite unit" and positions are "highly
coveted."  Therefore, plaintiff argues, assignment to the Van is
a "de facto promotion."  Plaintiff has indeed presented some
evidence that assignment to the Van carries prestige.  Therefore,
under Beyer, denial of assignment to the Van could be an adverse
employment action.  However, acknowledging that this is a close
case, I do not resolve the matter conclusively, as I find that
plaintiff's claim fails at the third step of McDonnell Douglas
analysis.

2.   Legitimate, Nondiscriminatory Reasons

The burden now shifts to defendants to provide legitimate,

---

[2] Plaintiff argues that he would have earned more overtime
on the Van.  I find that he has not presented evidence allowing a
reasonable fact finder to conclude that his overtime pay would
have been greater had he been assigned to the crime van.

nondiscriminatory reasons for their choices.  Howley, 217 F.3d at 150.  Defendants have offered reasons for assigning each Caucasian detective to the Van.  Some detectives, including Leitkowski, Vining, and Hoyt were chosen for their skills in specific investigatory areas or techniques.  Others, including Payette, Vining, Lamoureux, Hoyt, and Kasperowski, had college degrees.[3]  Still others, including McFadden, Lamoureux, Cargill, and Kasperowski, were chosen at least in part for their notable general investigatory skills, report writing, or strong evaluations.[4]  These are all legitimate reasons for choosing these detectives.  I now consider whether these reasons were pretextual.

3.  Pretext

To defeat summary judgment, a plaintiff must produce "sufficient evidence to support a rational finding that the

---

[3] While a college degree was not a requirement for Van assignment, having a degree could legitimately be considered a plus.  See Radman v. Ashcroft, No. 3:02-CV-1868, 2004 U.S. Dist. LEXIS 14811, at *12 (D. Conn. July 28, 2004) (bachelor's degree counted in candidate's favor for position at correctional facility).

[4] Defendants say that they chose Cargill in part because of his EMT training and experience.  Plaintiff is also trained as an EMT.  While it is not disputed that Cargill noted this training on his resume whereas plaintiff did not, plaintiff avers that he talked with Turner about being an EMT.  Viewing the facts in the light most favorable to the plaintiff, Turner knew plaintiff was a licensed EMT, so choosing Cargill for this training alone would not have been legitimate.  However, Cargill was also chosen for his investigatory skills and report writing.

legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994))(brackets omitted).

Plaintiff argues that he was more qualified than the candidates chosen for the Van.  He notes that he was more senior than they were and that Wakely rated him superior in every category on one evaluation.  Plaintiff is correct that the other candidates were sufficiently similarly situated to permit the minimal inference of discrimination needed to make out a prima facie case.  See McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001).  However, plaintiff's evidence does not permit a finding that his credentials were "so superior to the credentials of the person[s] selected for the [Van] that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question,'" as is required for a finding of pretext based on qualifications.  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)).

Plaintiff may also show pretext by producing circumstantial evidence that allows for a reasonable inference of

14

discrimination.   Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d
Cir. 2008).  Plaintiff has proffered several pieces of evidence
that he believes show discrimination, in addition to the absence
of African-American detectives on the Van.  First, he notes the
comment from Det. Contre that plaintiff "did not fit in" with the
other Van members and the comment from Capt. O'Hara that Payette
would "fit in better" than plaintiff.  While Matthews did not
believe Contre was referring to race, it did cross Wakely's mind
that O'Hara could be referring to race.  Plaintiff also offers
evidence that defendant DPS "has a known history of racism" that
includes a 1982 settlement in which DPS promised to improve
minority hiring and promotion.  Matthews, now the union
president, testified that minority DPS employees have told him
that these problems are still pervasive.  He also notes that two
detectives, one a Van member, had an offensive racist caricature
tacked onto a bulletin board in their offices.[5]

When ruling on a motion for summary judgment, a court may
rely on admissible evidence only.  Spiegel v. Schulmann, 604
F.3d 72, 81 (2d Cir. 2010); Sarno v. Douglas Elliman-Gibbons &
Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).  Both Detective
Contre's statement and Capt. O'Hara's statement about "fitting

---

[5] Plaintiff also refers to an incident where he and two
other black troopers were asked to submit a DNA sample in
connection with a murder investigation.  He has not elaborated on
the details or circumstances of this incident.

in" constitute inadmissible hearsay.  Further, there is
insufficient evidence to permit a finding that "fitting in"
referred to plaintiff's race.  Wakely's statement that it
"crossed [his] mind" that O'Hara's comment might have referred to
race is inadmissible.  Fed. R. Evid. 701 permits lay opinion
testimony that is "rationally based on the perception of the
witness" and "helpful to...the determination of a fact in issue."
Plaintiff argues that Wakely had "first-hand knowledge or
observation," see Lightfoot v. Union Carbide Corp., 110 F.3d 898,
911 (2d Cir. 1997), sufficient to satisfy Rule 701 because he
supervised plaintiff and was aware of the process by which a
detective applies for assignment to the Van.  Wakely's testimony
does not indicate that he was ever involved in the decision-
making process, nor does he identify any objective basis for his
opinion.  Wakely's testimony is also not helpful: at one point he
says it crossed his mind that O'Hara's comment might have
referred to race, Wakely Dep. 78, but at another point he says
he gathered from the comment that Fields, O'Hara and Turner
didn't like plaintiff, but he could not say why, id. 48.
Wakely's deposition testimony does not support a finding that the
"fitting in" comments referred to plaintiff's race.

     Evidence regarding the 1982 settlement is potentially
admissible.  Past acts "may constitute relevant background
evidence in a proceeding in which the status of a current

16

practice is at issue." <u>United Air Lines, Inc. v. Evans</u>, 431 U.S. 553, 558 (1977).  However, when courts have allowed evidence of time-barred incidents, the past acts involved the same parties. <u>See, e.g.</u>, <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 220 (2d Cir. 2004) (looking at time-barred promotion denials as background to a plaintiff's claim for persistent promotion denials); <u>Malarkey v. Texaco, Inc.</u>, 983 F.2d 1204, 1211 (2d Cir. 1993) (same; finding that refusing to admit this background evidence was not an abuse of discretion); <u>Woodbury v. New York City Transit Authority</u>, 832 F.2d 764 (2d Cir. 1987) (Feinberg, C.J., dissenting) (citing an incident six months before the applicable time period as relevant background evidence of discriminatory practice).  Even if this historical evidence is admissible, it is very weak: the lawsuit took place 30 years ago and plaintiff has presented no evidence that any of the parties to this case were involved.  Matthews' testimony about a "feeling within [the] agency that . . . minorities don't have the same opportunity," Matthews Dep. 35, is also of little relevance to the motives of the defendants in this specific case.

Even considering the history of discrimination, the current feeling that minorities have fewer opportunities within DPS, and the racist drawing in the office of two detectives not involved in the Van-assignment process, plaintiff has not presented sufficient evidence to support a finding of pretext.  Therefore,

defendants are entitled to summary judgment with regard to
plaintiff's Title VII discrimination claim.

C.   Equal Protection Claim

Plaintiff claims that by failing to select him for the Van,
the individual defendants violated his rights under the Equal
Protection Clause of the Fourteenth Amendment and are therefore
liable under § 1983.  To establish an equal protection violation,
plaintiff must show that (1) compared with similarly situated
employees, he was selectively treated, and (2) the selective
treatment was based on the impermissible consideration of race.
Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 166 (2d Cir.
2001).  This claim is analyzed using the same McDonnell Douglas
burden shifting framework employed in the analysis of plaintiff's
Title VII claim.  See Feingold v. New York, 366 F.3d 138, 159 (2d
Cir. 2004).  Plaintiff must present a prima facie case showing
that he was selectively treated relative to other similarly
situated employees.  See Graham v. Long Island R.R., 230 F.3d 34,
39 (2d Cir. 2000).  The burden then shifts to the defendants to
articulate a legitimate nondiscriminatory reason for the
treatment.  See id.  Plaintiff must then show that the treatment
was actually based on race.  Id.

As with the Title VII claim, plaintiff has made out a prima
facie case that he was treated differently than other similarly
situated employees, the white detectives who were assigned to the

Van; defendants have articulated legitimate, nondiscriminatory reasons for their choices; and plaintiff has not presented sufficient evidence to permit a finding of pretext.  Therefore, plaintiff's equal protection claim also fails.

D.   Title VII Retaliation Claims

Plaintiff argues that defendants retaliated against him for filing complaints with the CHRO by reassigning him to the Casino Unit and by continuing not to assign him to the Van.  Claims alleging retaliation in violation of Title VII are evaluated under the same McDonnell Douglass three-part burden-shifting framework.  See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  As explained below, I find that while plaintiff fails to show that defendants' legitimate reason for assigning him to the Casino Unit was pretextual, he has provided sufficient evidence for a jury to conclude that defendants stopped considering him for a position on the Van because he filed CHRO complaints.  Therefore, summary judgment is granted with regard to the reassignment claim but denied with regard to the claim that he was not assigned to the Van in retaliation for protected activities.

1.   Assignment to the Casino Unit

a.   Prima Facie Case

To make out a prima facie case of retaliation, plaintiff must show that (1) he engaged in protected activity; (2) his

19

employer was aware of the activity; (3) the employer took adverse
action against him; and (4) there is a causal connection between
the protected activity and the adverse employment action.  Gordon
v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000).  It is
undisputed that plaintiff engaged in protected activity by filing
complaints with the CHRO, the last of which was filed in December
2009, and that plaintiff's employer was aware of the activity.
Defendants do dispute, however, that assignment to the Casino
Unit was an adverse action for the purpose of a retaliation claim
and that plaintiff can show a causal connection.  I find that
plaintiff has established a prima facie case.

In Burlington Northern and Santa Fe Ry. Co. v. White, 548
U.S. 53 (2006), the Supreme Court defined "adverse action" for
purposes of a Title VII retaliation claim.  Actionable
retaliation is any action that "well might have dissuaded a
reasonable worker from making or supporting a charge of
discrimination."  Id. at 68 (internal quotation marks omitted).
Plaintiff has presented evidence that after his assignment to the
Casino Unit, he had a longer commute, and instead of
investigating major crimes, his duties were limited to performing
background checks on job applicants.  The Second Circuit has
noted that an undesirable assignment can sometimes serve as the
basis for a retaliation claim, see Zelnik v. Fashion Inst. of
Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quoting Morris v.

20

Lindau, 196 F.3d 102, 110 (2d Cir. 1999)) ("assignment of
lunchroom duty" could deter a person of ordinary firmness from
exercising his protected rights), but it has also noted that
assignment of menial tasks may be insufficient to support a
claim, see Dillon v. Morano, 497 F.3d 247, 254 (2d Cir. 2007)
(being assigned "clerical tasks" did not support a claim).  Here,
a jury could find that a person of ordinary firmness would have
been deterred from exercising his rights by the prospect of being
assigned to a far-away unit with significantly less engaging
work.  Therefore, plaintiff has made a sufficient showing that he
suffered an adverse employment action.

Plaintiff argues that because he was reassigned a mere five
months after his December 2009 complain, the assignment was
sufficiently close to the protected activity to permit a causal
inference.  Temporal proximity may give rise to an inference of a
causal connection for purposes of establishing a prima facie case
of retaliation.  See El Sayed v. Hilton Hotels Corp., 627 F.3d
931, 933 (2d Cir. 2010).  However, the proximity "must be very
close."  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273
(2001).  The Second Circuit has "not drawn a bright line to
define the outer limits beyond which a temporal relationship is
too attenuated to establish a causal relationship between the
exercise of a federal constitutional right and an allegedly
retaliatory action."  Gorman-Bakos v. Cornell Co-op Extension of

21

<u>Schenectady County</u>, 252 F.3d 545, 554 (2d Cir. 2001).  Three months was found to be too long in one case and eight months was found to be sufficiently short in another.  See <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009).  Here, I find that five months is a sufficiently short period for plaintiff to meet his minimal burden in making out a prima facie case of retaliation.

b.   <u>Legitimate Reason</u>

Defendants recount that in May 2010, a majority of detectives in plaintiff's troop complained that he made them uncomfortable at work.  They state that plaintiff was temporarily moved out of Major Crimes while an investigation into the complaints was pending.  This legitimate, non-discriminatory reason for the assignment is sufficient to shift the burden back to the plaintiff to show that the reason was pretextual.

c.   <u>Pretext</u>

Plaintiff has not demonstrated that this reason was a pretext for retaliation.  While his evidence of temporal proximity may allow him to make out a prima facie case of retaliation, it is not sufficient to support a finding of pretext.  <u>El Sayed</u>, 627 F.3d at 933.  Plaintiff also suggests that he should have been transferred to another troop to perform major crimes work.  This argument does not support a finding that defendants' legitimate reason for the assignment was a pretext for unlawful retaliation.  Plaintiff's retaliation claim fails

with regard to his assignment to the Casino Unit.

2.   Non-Assignment to the Van

Plaintiff alleges that defendants' continued failure to assign him to the Van after he filed his CHRO complaints was retaliatory.  I find that he has presented sufficient evidence to create a genuine issue of material fact with regard to this claim.

a.   Prima Facie Case

As with plaintiff's first retaliation claim, he did file CHRO complaints – a protected activity – and his employer knew he had filed them.  Plaintiff has submitted evidence of a causal nexus between his protected activity and defendants' failure to assign him to the Van.  Several times during his deposition, Sgt. Turner noted that he did not consider plaintiff for a position on the Van after the year 2007, because after plaintiff filed his October 2007 CHRO complaint referencing the June breakfast incident, Turner was told to "back off" or "to keep [his] distance."  Turner Dep. 78, 83.  Sgt. Turner noted that this directive came from legal affairs, and he also discussed it with then-Major Fields.  Id. 78-79.  He indicated that because he was not in contact with plaintiff, he could not gauge plaintiff's interest in being placed on the Van and would not have reached out to invite him to be on the Van.  Id. 79-81, 83.  The evidence supports a finding that after plaintiff filed his complaints,

defendants believed he did not want to be assigned to the Van, and they were hesitant to assign him because they thought he would make the other Van members uncomfortable.  See Id. 65, 79; Fields Dep. 80; O'Hara Dep. 71-72.  This evidence would permit a jury to find that because plaintiff complained, he was not afforded the normal process of consideration for the Van.  The process is informal – there is no application to fill out – but the evidence indicates that Turner and O'Hara would consider people they believed to be interested.  Turner Dep. 63-64.  If Turner could not gauge plaintiff's interest, he could not consider him along with the other detectives, and he therefore could not assign him.  Viewing the evidence most favorably to plaintiff, then, there was a causal nexus between the protected activity and the failure to assign plaintiff to the Van.

As noted above, for the purpose of a retaliation claim, an employer's decision qualifies as an adverse employment action if it "would deter a similarly situated person of ordinary firmness" from engaging in a protected activity.  Washington v. County of Rockland, 373 F.3d 310, 320 (2d. Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001).  Plaintiff's evidence indicates that EDMCU detectives considered the crime van to be an elite assignment, and detectives aspired to be placed on the Van. Further, plaintiff himself had expressed a desire to be placed on the Van, and plaintiff's complaints specifically concerned

defendants' failure to place him on the Van and his feelings of discomfort while serving as an alternate on the Van.  Therefore, declining to place plaintiff on the Van would be an adverse action even if declining to place another detective on the Van might not be.  See White, 548 U.S. at 69 (noting "an act that would be immaterial in some situations is material in others").  An ordinary person in plaintiff's position might well be deterred from filing protected complaints if he knew that he would then not be given the very assignment he complained about not receiving.  Therefore, viewing the evidence in the light most favorable to the non-movant, plaintiff suffered an adverse employment action when he was not assigned to the crime van.

b.   Legitimate Reasons

Above, I discussed the reasons defendants have offered for each white detective they assigned to the Van instead of assigning plaintiff.  I found these reasons to be legitimate.  Therefore, plaintiff must show that the reasons were pretextual.

c.   Pretext

Plaintiff's evidence supports a finding that as a result of his complaints to the CHRO, defendants did not consider him for vacancies on the Van after 2007.  This evidence – showing that Turner did not consider him for Van vacancies because he was told to "back off" and "keep his distance" – is sufficient to support a finding that defendants' reasons are pretextual.  Defendants'

25

reasons for choosing Detective Cargill, for example, over plaintiff are not viable if plaintiff was never actually in contention for the position along with Cargill.  Therefore, summary judgment on this retaliation claim is inappropriate.

E.   Immunity Defenses

Defendants also assert defenses of sovereign immunity as to all individual defendants in their official capacities, qualified immunity as to all individual defendants in their individual capacities, and failure to exhaust administrative remedies as to claims concerning Sgt. Cox.

1.   Sovereign Immunity

Plaintiff agrees that the defendants, in their official capacities, are immune from claims for money damages under 42 U.S.C. § 1983.  These claims are dismissed.

2.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity because they did not violate a "clearly established statutory or constitutional rights of which a reasonable person would have known." Connecticut v. Gabbert, 526 U.S. 286, 290 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  And as qualified immunity gives officials freedom from suit, not merely liability, the Supreme Court has

urged district courts to resolve immunity questions at the earliest possible stage of litigation.  See Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

In determining whether an official is protected, courts look not at "what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." Young v. Cnty. of Fulton, 160 F.3d 899, 903 (2d Cir. 1998). Uncontroverted testimony indicates that the directive to cease communication with plaintiff came from DPS's legal affairs department.  By complying with his lawyers, Turner neither willfully violated the law nor acted incompetently.  While it is clearly established that an employer may not retaliate against protected activity, "[t]he contours of the right [to be free from retaliation] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Zieper v. Metzinger, 474 F.3d 60, 68 (2d Cir. 2007) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  A reasonable official would not know that staying away from an employee who had just complained of a hostile work environment would violate the law.  Therefore, the individual defendants are protected by qualified immunity.

3.   Failure to Exhaust

Defendants assert that plaintiff failed to exhaust his

administrative remedies with regard to Sgt. Cox.  They are correct, and therefore plaintiff cannot bring a Title VII claim concerning Sgt. Cox's actions.  Cox's negative evaluations and undue scrutiny of plaintiff's work are not so closely related to plaintiff's CHRO complaints that they fall under the <u>Butts</u> exceptions.  <u>See</u> <u>Williams v. N.Y.C. Hous. Auth.</u>, 458 F.3d 67, 70 & n.1 (2d Cir. 2006) (discussing EEOC complaints).  They allege retaliation of a different type from a different person.  There is no indication that a CHRO complaint regarding Sgt. Cox's actions would have been futile.  <u>See</u> <u>id.</u>  Therefore, plaintiff's claims concerning Sgt. Cox are dismissed.

F.   <u>Motion to Strike</u>

     Defendants move to strike all or part of plaintiff's Rule 56(a)2 statement of disputed material facts (doc. 72-1).  This motion appears to be made pursuant to an unadopted Rule 56 that was proposed in 2008, which would have allowed for a reply brief. Defendants' motion to strike is therefore denied.  To the extent that defendants object that material cited could not be presented in admissible form – a response allowed under Fed. R. Civ. P. 56(c)(2) – I note these objections.  Accordingly, I have not relied on ¶ 25 or ¶ 43 of plaintiff's statement, as neither is based on admissible evidence.

III. <u>Conclusion</u>

     For the foregoing reasons, defendants' motion for summary

28

judgment (doc. 65) is granted in part and denied in part.  The
motion is granted with regard to plaintiff Title VII claim
against DPS and with regard to plaintiff's § 1983 claims.  The
motion is granted as to plaintiff's Title VII retaliation claim
regarding plaintiff's reassignment to the Casino Unit.  Summary
judgment is denied with regard to plaintiff's Title VII
retaliation claim against DPS regarding defendants' failure to
assign him to the van.  All individually named defendants are
dismissed from the case; only defendant DPS remains.

So ordered this 31st day of March 2012.


                              _____
                                      /s/ RNC
                                Robert N. Chatigny
                              United States District Judge